**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

ANGEL M. HARRIS,

    Plaintiff,

v.                                                     Case No:  5:15-cv-529-Oc-30PRL

CELLCO PARTNERSHIP d/b/a
Verizon Wireless and JAMES SLOAN,

    Defendants.
_____/

# **ORDER**

THIS CAUSE comes before the Court upon Plaintiff's Motion to Remand (Doc. 13) and Defendants' response in opposition (Doc. 17). The Court, having reviewed the motion and response, and being otherwise fully advised in the premises, concludes that the motion should be denied.

**I. BACKGROUND**

Plaintiff initiated this action against her former employer, Cellco Partnership ("Verizon Wireless"), and her former supervisor, James Sloan, in the Fifth Judicial Circuit in and for Lake County, Florida. Plaintiff alleges claims for gender discrimination, including sexual harassment, under the Florida Civil Rights Act ("FCRA"), and various other state law claims against Verizon Wireless (Counts I-VI). (Doc. 2). Plaintiff also alleges a claim for tortious interference with a business relationship against Mr. Sloan (Count VII). Mr. Sloan, joined by Verizon Wireless, removed the action to this Court on

the basis of diversity jurisdiction under 28 U.S.C. § 1332, arguing that the parties are completely diverse because Plaintiff is a citizen of Florida, and Mr. Sloan, who is also a citizen of Florida, was fraudulently joined to defeat diversity jurisdiction. (Doc. 1). Plaintiff now seeks remand of her claims alleging that Defendants have not established (1) complete diversity of citizenship or (2) an amount in controversy greater than $75,000. (Doc. 13).

## II. DISCUSSION

Where the alleged basis for federal jurisdiction is diversity under § 1332, as it is in this case, the removing defendant has the burden of demonstrating (1) complete diversity of citizenship and (2) an amount in controversy greater than $75,000. *See* § 1332(a). Plaintiff asserts that Defendants have neither established complete diversity of citizenship nor an amount in controversy that exceeds $75,000. (Doc. 13).

### 1. Citizenship

Plaintiff argues that Defendants have not established by a preponderance of the evidence that Plaintiff is a citizen of Florida. (Doc. 13 at 8-10). Plaintiff's argument is disingenuous. Plaintiff does not assert that she is not a citizen of Florida, but only that Defendants have not *proven* that Plaintiff is a citizen of Florida. Although Defendants adequately alleged Plaintiff's citizenship in their notice of removal, the additional evidence submitted by Defendants in response to Plaintiff's motion further satisfies their burden. (Doc. 17, Exs. A-D). Thus, Defendants have adequately established that Plaintiff is a citizen of Florida.

## 2. Fraudulent Joinder of Mr. Sloan

Mr. Sloan is also a citizen of Florida. Typically, in such a case, complete diversity of citizenship would not exist. Mr. Sloan asserts, however, that he was fraudulently joined to defeat diversity jurisdiction. (Docs. 1, 17). Plaintiff counters that Mr. Sloan was not fraudulently joined because Plaintiff has a colorable claim against Mr. Sloan under Florida law for tortious interference with a business relationship. (Doc. 13).

It is generally accepted that diversity is not destroyed by fraudulently joined defendants. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). Joinder is fraudulent when there is *no possibility* the plaintiff can prove a cause of action against the nondiverse defendant. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "The burden of establishing fraudulent joinder is a heavy one. Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

In determining whether a party was fraudulently joined, a court must review the factual allegations in the light most favorable to the plaintiff and resolve uncertainties about the applicable law in favor of the plaintiff. *Id.* The role of the court is not to weigh the merits of a plaintiff's claim beyond the determination of whether the claim is colorable under state law. *Id.* "The plaintiff need not have a winning case; rather, the plaintiff need have only a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287; *see also Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011).

3

Defendants argue that Mr. Sloan was fraudulently joined because Plaintiff's claim for tortious interference with a business relationship (Count VII) could not be sustained under Florida law. (Docs. 1, 17). Pursuant to Florida law, Plaintiff must establish five elements to state a claim for tortious interference with a business relationship: (1) the existence of a business relationship under which the claimant has rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship; (4) by a third party; and (5) damage to the claimant caused by the interference. *See Rudnick v. Sears, Roebuck & Co.*, 358 F. Supp. 2d 1201, 1205-07 (S.D. Fla. 2005). Here, Defendants assert that Mr. Sloan, as Plaintiff's supervisor, is not a third party to the employment relationship and Plaintiff's claim fails on the fourth element. (Doc. 17 at 11-12).

Generally, Defendants' contention is correct. A supervisor cannot be held liable for terminating an employee because the supervisor is considered a party to the employment relationship. *Alexis v. Ventura*, 66 So. 3d 986, 988 (Fla. 3d DCA 2011) (citing *Rudnick*, 358 F. Supp. 2d at 1206). An exception exists, however, to this general rule if the supervisor was acting outside the scope of his or her employment "solely with ulterior purposes" or not in the principal employer's best interest. *Id.* (citing *O.E. Smith's Sons, Inc. v. George*, 545 So. 2d 298, 299 (Fla. 1st DCA 1989)). "Although 'an allegation that [defendant] was maliciously motivated does not by itself mean that [defendant] acted outside the scope of his employment,' an allegation that the defendant was not acting on the employer's behalf or was acting to its detriment satisfies the 'third party' requirement." *Id.* (quoting *Sloan v. Sax*, 505 So. 2d 526, 528 (Fla. 3d DCA 1987)).

Defendants argue that they have introduced facts that, if uncontroverted, would preclude Plaintiff from establishing a claim of tortious interference with a business relationship. (Doc. 17 at 15). Specifically, to refute Plaintiff's allegation that Mr. Sloan was acting outside the scope of his employment, Defendants presented the affidavit of Kendra Wilson, which attaches a "Business Request for Termination of Employment" (the "Request") prepared by Mr. Sloan. (Doc. 1, Ex. D). The Request indicates that Mr. Sloan sought to terminate Plaintiff because she provided improper discounts to customers in violation of Verizon's code of conduct. (*Id.* at 4). Specifically, the Request describes that over a nine-day period, Plaintiff used a particular customer's account on several occasions to provide discounts to other customers who were not eligible for the discounts. The Request recounts that when Plaintiff was questioned about the discounts she explained that it could have occurred unintentionally on one occasion, but could not explain why it would have occurred multiple times over a nine-day period absent a system error. The affidavit also states that the Request was reviewed by several human resources personnel, including Mr. Sloan's direct supervisor, and approved by each of them. (*Id.*).

In determining whether a party was fraudulently joined a court may consider the pleadings, affidavits, and depositions in its analysis. *Stillwell*, 663 F.3d at 1333 n.1. And the uncontroverted declaration of a nondiverse defendant can be sufficient to demonstrate that he or she was fraudulently joined. *See Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) (concluding that where a defendant's affidavit is undisputed, a court cannot resolve

the facts in the plaintiff's favor based solely on the unsupported allegations in the plaintiff's complaint).

Defendants' affidavit is uncontroverted because Plaintiff has not presented an affidavit or other evidence that refutes the factual statements contained in Ms. Wilson's affidavit. In fact, Plaintiff's motion to remand does not address the facts presented by Ms. Wilson's affidavit at all. The affidavit of Ms. Wilson demonstrates that Mr. Sloan sought to discharge Plaintiff for a legitimate business purpose, i.e., providing discounts to ineligible customers in violation of Verizon's code of conduct. In light of the fact that Mr. Sloan has submitted a legitimate business purpose for Plaintiff's discharge, which Plaintiff has not disputed, Plaintiff cannot demonstrate that Mr. Sloan was acting *solely* with ulterior purposes or not in the principal employer's best interest.

Although the Court considered Plaintiff's affidavit attached to her complaint, which states that she did not *intentionally* provide ineligible customer discounts through the use of another customer's account (Doc. 2, Ex. E), Plaintiff's affidavit does not create an issue of fact regarding the explanation for Plaintiff's discharge offered by Mr. Sloan. Plaintiff does not allege in her affidavit that (1) Mr. Sloan fabricated the allegations, (2) Mr. Sloan was mistaken and she did not provide ineligible discounts, or (3) whether she provided the discounts intentionally or unintentionally, she did not violate Verizon's code of conduct. Plaintiff more or less concedes that she may have provided the unauthorized discounts, albeit unknowingly.

The exception that one's supervisor may be a party outside of a plaintiff's employment relationship is necessarily a narrow one. Otherwise the exception would

swallow the rule. Every garden-variety employment lawsuit contains allegations of discrimination or harassment of one kind or another. In light of the uncontroverted facts presented by Defendants, Plaintiff's boilerplate allegations are simply insufficient to demonstrate that Mr. Sloan was acting outside the scope of his employment.

Unlike *Rudnick*, where the plaintiff alleged that his supervisor made "false negative accusations about his job performance" to induce his employer to terminate him, which go beyond standard allegations of discrimination and could demonstrate that the supervisor was acting outside the scope of her employment, Plaintiff's unsupported, conclusory allegations do not take Mr. Sloan's actions beyond the scope of his employment. *See Rudnick*, 358 F. Supp. 2d at 1204. Thus, no possible cause of action exists against Mr. Sloan for tortious interference with a business relationship and Defendants have established fraudulent joinder.

And if such allegations were sufficient to establish a claim for tortious interference with a business relationship, a plaintiff could use the claim to circumvent the prohibition on individual liability under the FCRA. *See Patterson v. Consumer Debt Mgmt. & Educ., Inc.*, 975 So. 2d 1290, 1291-92 (Fla. 4th DCA 2008) (concluding that "the FCRA does not impose liability on individual employees/supervisors"). Florida common law does not recognize a claim for discrimination, which is the very reason for the creation of the FCRA. While the Court recognizes that the FCRA does not prohibit separate common law causes of action, allowing a supervisor's discriminatory conduct to subject them to liability for tortious interference with a business relationship without demonstrating that the supervisor

was acting outside the scope of employment would punish discriminatory conduct which is the exclusive province of the FCRA.

### 3. Amount in Controversy

Plaintiff also argues that Defendants have not established an amount in controversy greater than $75,000. (Doc. 13). When damages are not specified in the state-court complaint, the defendant seeking removal must prove by a preponderance of the evidence that "the amount in controversy more likely than not exceeds . . . the jurisdictional requirement." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citation and internal quotation marks omitted). However, a removing defendant is not required "to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

In determining the amount in controversy, the court should first look to the complaint. *Id.* If the amount is unascertainable from the complaint, the court can look to the notice of removal and other "evidence relevant to the amount in controversy at the time the case was removed," including evidence submitted in response to the motion to remand. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1320 (11th Cir. 2001). In *Pretka v. Kolter City Plaza II, Inc.*, the Eleventh Circuit held that a party seeking to remove a case to federal court within the first thirty days after service is not restricted in the types of evidence it may use to satisfy the jurisdictional requirements for removal. 608 F.3d at 770-71. This evidence may include the removing defendant's own affidavit, declaration, or other documentation. *Id.* at 755. Moreover, district courts are permitted to make "reasonable deductions" and "reasonable inferences," and need not "suspend reality or shelve common

sense in determining whether the face of the complaint . . . establishes the jurisdictional amount." *Id.* at 770 (citation and internal quotation marks omitted). "Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe*, 613 F.3d at 1062.

In her complaint, Plaintiff simply alleges that her damages exceed $15,000. (Doc. 2). Thus, it is not facially apparent from the complaint that the amount-in-controversy requirement has been satisfied. Plaintiff asserts that Defendants rely solely on a demand letter from Plaintiff seeking $150,000, which Plaintiff contends is insufficient to satisfy their burden. (Doc. 13 at 3-7). Specifically, Plaintiff alleges that such demand letter amounts to no more than unsubstantiated puffery. (*Id.* at 4).

Generally, a settlement offer or demand letter does not *automatically* establish the amount in controversy for purposes of diversity jurisdiction. *See Zabic v. Verizon Wireless Servs., LLC*, No. 8:15-CV-2565-T-33AEP, 2015 WL 9267693, at *3-4 (M.D. Fla. Dec. 19, 2015); *Lamb v. State Farm Fire Mut. Auto. Ins. Co.*, No. 3:10-cv-615-J-32JRK, 2010 WL 6790539, at *2 (M.D. Fla. Nov. 5, 2010); *Piazza v. Ambassador II JV, L.P.*, No. 8:10-cv-1582-T-23EAJ, 2010 WL 2889218, at *1 (M.D. Fla. July 21, 2010) ("A settlement offer is relevant but not determinative of the amount in controversy."). More important is whether the demand letter reflects "puffing and posturing" or whether it provides "specific information to support the plaintiff's claim for damages" and thus offers a "reasonable assessment of the value of [the] claim." *Lamb*, 2010 WL 6790539, at *2.

As of March 25, 2015, when Plaintiff sent her demand letter, she alleged that she suffered $53,308.83 in damages for back pay and front pay. (Doc. 1, Ex. B). Plaintiff also

9

asserted that she suffered emotional distress which caused sleeplessness, anxiety, depression, and loss of self-esteem, and injury to her credit standing and reputation. (*Id.*). Therefore, relying on, among other things, jury verdicts awarding more than $150,000 in FCRA discrimination cases, Plaintiff asserted that her compensatory damages would amount to approximately $100,000 to $150,000, which did not include an assessment of attorney's fees and costs. *See* Fla. Stat. § 760.11(5) (permitting an award of attorney's fees under the FCRA). Plaintiff's estimate of compensatory damages also did not include a value for punitive damages, which are recoverable under the FCRA up to $100,000. *See id.* Thus, Plaintiff's settlement offer of $150,000 was not plucked from thin air or offered as a symbolic gesture. Rather it was supported by a concrete number reflecting Plaintiff's damages for back pay and front pay and estimates of potential damages for emotional distress, attorney's fees, and punitive damages, which are recoverable under Florida law and which were supported by jury verdicts rendered in similar cases.

Construing Plaintiff's damages as a whole and applying its "judicial experience and common sense," the Court concludes that Defendants have established by a preponderance of the evidence that Plaintiff's damages more likely than not exceed $75,000. *See Roe*, 613 F.3d at 1062.

### III. CONCLUSION

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion to Remand (Doc. 13) is DENIED.

2. Defendant James Sloan is DISMISSED without prejudice as a defendant in this case. *See, e.g.*, *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007)

(stating that in a fraudulent joinder situation, "the federal court must dismiss the non-diverse defendant"); *Dumas v. ACCC Ins. Co.*, 349 F. App'x 489, 492 (11th Cir. 2009) (concluding that where a district court found the defendant fraudulently joined, "the district court correctly dismissed him from the action"). Defendant James Sloan's Motion to Dismiss Count VII of the Complaint (Doc. 7) is TERMINATED as moot.

**DONE** and **ORDERED** in Tampa, Florida, this 15th day of January, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record